UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------
IN RE:                                )
                                      )        CHAPTER 7
SCOTT A. BEAUDOIN and                 )
JENNIFER J. BEAUDOIN,                 )        CASE NO. 07-21257 (ASD)
                                      )
        DEBTORS                       )        RE: DOC. I.D. NOS. 17 and 18
----------------------------------------------------

_____

APPEARANCES:

Kent S. Baker, Esq.                            Attorney for Debtors
Law Offices of Kent Steven Baker
120 Broadway
P.O. Box 666
Norwich, Connecticut 06360


Rowena A. Moffett, Esq.                        Attorney for Creditor IndyMac
Brenner, Saltzman & Wallman LLP                Bank, F.S.B.
271 Whitney Avenue
New Haven, Connecticut 06511
_____


**MEMORANDUM OF DECISION ON CREDITOR INDYMAC BANK, F.S.B.'s
(1) OBJECTION TO PROPERTY CLAIMED AS EXEMPT, AND
(2) MOTION FOR DETERMINATION OF SECURED STATUS**


ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I. INTRODUCTION

The instant matter raises the questions of whether a cause of action, not expressly

1

exempt under Section 522 of the Bankruptcy Code[1], is property that may be exempt by a debtor pursuant to the "wild-card" exemption of Section 522(d)(5), and whether the lien of creditor IndyMac Bank, F.S.B. extends to and is secured in part by the Debtors' interest in the cause of action.

The first question has not been addressed by the Second Circuit. However, as discussed in detail in Section IV, A, 4, infra, this Court aligns itself with the majority of courts which have addressed this issue by construing Section 522(d)(5) liberally to include no limitation on the type of property which may be exempt thereunder. Accordingly, the Court determines that the objection of IndyMac Bank, F.S.B. to the Debtor's claim of exemption, (Doc. I.D. No. 18), shall be **OVERRULED**.

With regard to the second question, this Court determines that IndyMac Bank, F.S.B. has a valid lien in the amount of $148,681.10, but that such lien is unsecured by the proceeds from the Debtors' cause of action because the lien was never perfected with respect to personal property other than fixtures, and therefore, that its . . . Motion for Determination of Secured Status, (Doc. I.D. No. 17), shall be **DENIED.**

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(B),

---

[1]11 U.S.C. § 522 (2005).

(K).

## III.  PROCEDURAL AND FACTUAL BACKGROUND

### A.  The Mortgage and Security Interest

On December 20, 2004, Scott and Jennifer Beaudoin (hereafter and heretofore, the "Debtors") executed a promissory note to IndyMac Bank, F.S.B. (hereafter, "IndyMac") in the amount of $272,600.00, (Doc. I.D. No. 17, Exh. A).  As collateral for the loan, the Debtors granted IndyMac a security interest in real property located at 15 Sable Drive, Ledyard, Connecticut (hereafter, the "Real Property"), as well as in certain personal property related to the Real Property[2].  IndyMac subsequently perfected its security interest with respect to the Real Property and its fixtures.  Doc. I.D. No. 17, at ¶ 4.

### B.  The Debtors' State Court Cause of Action

In June 2006, the Debtors commenced a civil lawsuit[3] (hereafter, the "Action") against Smart Start Building Systems (hereafter, "Smart Start") alleging the defendant's failure to build a modular home on the Real Property.  The Action was ultimately settled by a compromise of the claim, entitling the Debtors to receive $31,000.00 as compensation (hereafter, the "Proceeds of the Action" or "Proceeds").  *See*, *Order Granting Motion to*

---

[2]The security interest granted IndyMac the right to "any and all buildings, improvements (provided in the Agreement or otherwise), and tenements now or hereafter erected on the Property; . . . any and all contracts and subcontracts relating to the Property; any and all accounts, contract rights, instruments, documents, general intangibles, and chattel paper arising from or by virtue of any transactions related to the Property; . . .any and all products and proceeds arising from or by virtue of the sale, lease or other disposition of any of the Property; . . . all other interests of every kind and character which Borrower now has or at any time hereafter acquires in and to the Property, including all other items of property and rights described elsewhere in this Security Instrument."  Doc. I.D. No. 17, Exhibit B, *Residential Construction Loan Rider with Security Agreement and Financing Statement*, at ¶ 8.

[3]*Scott Beaudoin and Jennifer Beaudoin v. Smart Start Building Systems, Inc.*, Judicial District of New London at Norwich, Docket No. KNO-CV-06-5100452-S.

*Compromise*, Doc. I.D. No. 51, dated November 21, 2008.

## C.  The Bankruptcy Petition and Objection to Exemption

The Debtors filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code on September 12, 2007, and received their discharge on December 11, 2007.  On Schedule C, (Doc. I.D. No. 1), the Debtors listed the Action as property exempt from the estate pursuant to Title 11, United States Code, Section 522(d)(5) in the amount of $17,250.00.  IndyMac filed the present objection (hereafter, the "Objection") to the Debtors' claim of exemption on November 8, 2007, (Doc. I.D. No. 18), alleging that the Debtors are not entitled to the exemption on the grounds that (1) "the Action is subject to a valid lien by IndyMac" by virtue of IndyMac's security interest; (2) the Action is not "property subject to exemption under 11 U.S.C. § 522(d)(5)" because the cause of action is not specifically enumerated as exempt property under Section 522(d)(11); and (3) even if the Debtors are entitled to exempt the Action, IndyMac is entitled to any equity amount above the allowed exemption.  IndyMac filed a separate motion to determine its status as a secured creditor (hereafter, the "Motion"), (Doc. I.D. No. 17).

A hearing was held on September 10, 2009, wherein the parties requested that the Objection be resolved upon the briefs.  The Debtors thereafter submitted their Debtors' Brief in Opposition to Creditor IndyMac Bank, F.S.B.'s Objection to Property Claimed as Exempt, (Doc. I.D. No. 61), on September 22, 2009, and IndyMac submitted its . . . Reply in Support of Its Objection to Property Claimed as Exempt, (Doc. I.D. No. 62), on October 1, 2009.  The parties continued the resolution of IndyMac's Motion pending a resolution of the Objection.

4

On November 19, 2009, a hearing was held wherein the Court advised the parties that the Objection and the Motion were sufficiently related that a resolution of both matters simultaneously was feasible.  The Chapter 7 Trustee, on December 16, 2009, filed his Response . . . to Creditor IndyMac Bank, F.S.B.'s Motion for Determination of Secured Status, (Doc. I.D. No. 63), and on December 22, 2009, IndyMac filed its . . . Reply in Support of Its Motion for Determination of Secured Status, (Doc. I.D. No. 64).  In the interest of judicial economy, the Court now decides both the Objection and the Motion herein.

## IV.  DISCUSSION

### A.  IndyMac's Objection to the Debtors' Claim of Exemption

#### 1.  Exemption Under Section 522(d)(5)

The Debtors' cause of action against Smart Start, which arose and was commenced by the Debtors pre-petition, unequivocally constitutes property of the estate.  "The filing of a Chapter 7 petition creates a bankruptcy estate encompassing 'all legal or equitable interests of the debtor in property as of the commencement of the case,' 11 U.S.C. § 541(a)(1), including any causes of action possessed by the debtor."  *In re de Hertogh*, 412 B.R. 24, 29 (Bankr. D. Conn. 2009) (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir.1989)).

Although a debtor's bankruptcy estate is essentially liquidated under Chapter 7 of the Bankruptcy Code to pay creditors, Congress provided for various exemptions of property which the debtor is permitted to retain in order to effect the underlying purpose of the Bankruptcy Code in affording debtors a fresh start.  As this Court recently noted,

5

The effect of an exemption is twofold. First, the exempted property is removed from the estate and is not distributable to unsecured creditors in bankruptcy. See 11 U.S.C. § 522(b). Second, to the extent set forth in Section 522(c), the exempt property is placed beyond the reach of the debtor's prepetition creditors outside of bankruptcy.

*In re Banner*, 394 B.R. 292, 299 (Bankr. D.Conn. 2008). The Debtors herein seek to

exempt, *inter alia*, the Proceeds of the Action pursuant to Bankruptcy Code Section 522,

which provides in pertinent part that:

522 (b)
> (1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in . . . paragraph (2) . . . of this subsection.
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> * * *
>
> (d) The following property may be exempted under subsection (b)(2) of this section:
> (1) The debtor's aggregate interest, not to exceed $20,200 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
>
> * * *
>
> (5) The debtor's aggregate interest *in any property*, not to exceed in value $1,075 plus up to $10,125 of any unused amount of the exemption provided under paragraph (1) of this subsection.
>
> * * *

11 U.S.C. § 522(b),(d) (2007) (emphasis added).

On the Debtor's Schedule C ("Property Claimed as Exempt"), the Debtors do not

claim any "homestead" exemption under Section 522(d)(1). Therefore, the Debtors may

claim under Section 522(d)(5) an exemption in property for the full unused $10,125.00 of

6

the Section 522(d)(1) exemption, plus $1,075.00, for a total of $11,200.00.[4]  At issue is

whether the Action, not expressly exempt under other subsections of Section 522, may

nonetheless be exempt as "any property" under the so-called "wild-card" exemption

provision of Section 522(d)(5).

### 2.  Burden of Proof

Under the Federal Rules of Bankruptcy Procedure, "the objecting party has the

burden of proving that the exemptions are not properly claimed."  Fed. R. Bankr. P.

4003(c).  As the objecting party, IndyMac bears the burden of proof in establishing that the

Debtors' claimed exemption of the Proceeds of the Action is improper.

Connecticut construes exemptions broadly, and this Court has recognized that

> exemption laws must be liberally construed in favor of a debtor and/or the
> debtor's family, so that their purposes may be properly effectuated. For this
> reason, no mere technicality should defeat the right of exemption, and
> whenever the claim to an exemption can be brought within the purpose and
> intent of the statute by a fair and reasonable interpretation, the exemption
> should be allowed. Thus, statutory language should not be restricted in its
> meaning and effect so as to minimize its operation on the beneficent objects
> of the statutes. Furthermore, when there is a doubt as to a statute's intent, it
> should be construed in favor of the debtor, especially in the absence of a
> clear legislative statement not to favor the debtor, since the creditor is almost
> always in a better position to protect its interest than is a debtor.

*In re Caraglior*, 251 B.R. 778, 782-783 (Bankr. D.Conn. 2000) (citing 31 Am.Jur.2d

Exemptions § 17 (1989)); *accord, In re Weaver*, 339 F.Supp. 961, 963 (D.Conn.1972); *In*

*re Clifford*, 222 B.R. 8, 12 (Bankr. D.Conn.1998); *Hitchcock v. Holmes*, 43 Conn. 528

---

[4]The Court notes that the Debtors' Schedule C lists various items as exempt under Section
522(d)(5), but that the total value of the property claimed as exempt under this absence ($21,369.99)
exceeds the statutory maximum allowed ($11,200.00) if all such property is subject to exemption.  In
addition, the scheduled value of the Action alone ($17,250.00) which the Debtors seek to exempt under
Section 522(d)(5) exceeds the statutory maximum allowed if such property is subject to exemption.

(1876).

### 3.   Statutory Construction of Section 522(d)(5)

Facially, Section 522(d)(5) contains language that appears plain and unambiguous, referring to "the debtor's aggregate interest in *any* property." (Emphasis added).  However, Black's Law Dictionary defines "any" as having several possible meanings, including "some," "one out of many," and "an indefinite number."  *Black's Law Dictionary*, 5th ed. (1979) (citing *Federal Deposit Ins. Corp. V. Winton*, C.C.A. Tenn., 131 F.2d 780, 782 (1942)).  The term "any" therefore cannot be read in a vacuum, and "its meaning in a given statute depends upon the context and the subject matter of the statute."  *Id.* (citing *Donahue v. Zoning Bd. of Appeals of Town of Norwalk*, 155 Conn. 550, 235 A.2d 643, 646 (1967)).

The context of Section 522(d)(5) lends support to a liberal construction of the word "any" because the other words used in that subsection impose no limitation on the types of property which may be exempt thereunder.[5]  "Any," as used therein, modifies the word "property," which is not defined in Section 522.  However, Section 522 explicitly includes a cross-reference to Section 541, which  broadly includes a cause of action as property of the estate.  *See, Matter of Smith*, 640 F.2d 888, 892 (7th Cir. 1981) ("All causes of action become property of the estate under section 541.").  It is therefore reasonable to construe the property that "any" modifies in Section 522(d)(5) as all property that is part of the estate.

---

[5]In Section 522(d)(11), for example, Congress chose to carefully limit the type of property which may be exempt, rather than allowing an exemption of "any" such property.

A liberal construction of the word "any" is further supported by the subject matter of the statute.  The purpose of allowing the exemption of property from the bankruptcy estate is to provide debtors with resources sufficient for them to begin anew to become productive members of society.  If all of a debtor's property could be distributed to creditors under Chapter 7, the fundamental aim of the Bankruptcy Code would be frustrated.  On the other hand, if the full value of all of a debtor's property was subject to exemption, there would be no assets to distribute to creditors, and the availability of consumer credit would soon diminish.  The Bankruptcy Code, therefore, strikes a delicate balance in the exemptions it permits;  property can be exempt only in a quantity and/or quality that Congress has determined will enable a debtor's fresh start and offer adequate protection to creditors.

It is against this backdrop that Section 522(d)(5) of the Bankruptcy Code was enacted, in this Court's view, as a quantitative provision.  Section 522(d)(5) does not expressly place a qualitative limit on the type of property which may be exempt thereunder, but does in fact place a quantitative limit on such property, limiting any Section 522(d)(5) exemption to $11,200 if none of the Section 522(d)(1) exemption is used.

Assuming, *arguendo*, that Section 522(d) is facially ambiguous, the legislative history of the Bankruptcy Code nevertheless suggests that the Congressional intent was to construe the Section 522(d)(5) "catch-all" general exemption broadly by providing a comparable substitute to those debtors not exempting a homestead.  The House Report indicates that Section 522(d)(5) "permits the exemption of [a set dollar amount] plus any unused amount of the homestead exemption, in any property, in order not to discriminate

9

against the nonhomeowner."[6]   The legislative history reveals that "there is a Federal interest in seeing that a debtor that (sic) goes through bankruptcy comes out with adequate possessions to begin his fresh start."   *Id.* at 126; Collier at Volume C, App. Pt. 4-1220.

If Congress desired to limit the types of property that were subject to this general exemption, it could have easily done so by modifying the word "property" with a more specific adjective or clause, just as it did explicitly in other subsections of Section 522.[7] In the alternative, Congress could have listed specifically the particular types of property subject to the exemption, just as it did explicitly in other subsections[8], rather than using the broad term "any" to describe the type of property subject to exemption.   Therefore, the Court is not persuaded by IndyMac's argument that the exemption under § 522(d)(5) should be limited to only causes of action listed in § 522(d)(11).

In support of its argument, IndyMac notes that "if [Congress] intended [in Section 522(d)(5)] some kind of 'wild card' or 'unfilled bin,' it was going to a lot of unnecessary trouble in specifying types of property to be exempt [elsewhere in Section 522],"   *In re Smith*, 5 B.R. 500, 502-503 (D. Ill. 1980).   However, the case relied upon by IndyMac was

---

[6]*See, Report of the Committee on the Judiciary, House of Representatives, to Accompany H.R. 8200*, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), p. 361; Collier on Bankruptcy, 15th ed. rev. (2008), Volume C, App. Pt. 4-1498.

[7]E.g., Section 522(b)(1) (". . .the property *listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection*"); Section 522(b)(2) ("Property *listed in this paragraph*"); and Section 522(d)(1) (". . . *real* property or *personal* property *that the debtor or a dependent of the debtor uses as a residence* . . .").

[8]E.g., Section 522(d)(3) ("household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments"); Section 522(d)(6) ("implements, professional books, or tools"); and Section 522(d)(10)(A) ("social security benefit, unemployment compensation, or a local public assistance benefit").

10

ultimately reversed by the Seventh Circuit. *See, In re Smith*, 640 F.2d 888 (7th Cir. 1981).

IndyMac's contention is inherently flawed for two reasons. First, the explicit delineation of the types of property subject to exemption elsewhere in Section 522 evidences the types of property which are likely of little value to creditors, or which are necessary to effect a debtor's fresh start[9]. Of these items, a debtor's home is paramount.

In fact, the legislative history of Section 522(d)(5) reveals that Congress sought to extend the value of the homestead exemption to homeowners and non-homeowners alike[10]. It is significant to note that the Action that the Debtors seek to exempt derives from the failure of a contractor to build a modular home for them. *See* Doc. I.D. No. 17, Exh. F. Although Section 522(d)(5) permits an exemption in "any property," it was clearly within the intent of Congress, so as not to discriminate against nonhomeowners, to permit an exemption in property which is so interrelated to home ownership as the Action against the builder herein in order to leave the Debtors with sufficient resources for their "fresh start." It appears that an exemption so closely related to a debtor's basic necessities would be permitted not only under the broad interpretation of Section 522(d)(5) advanced by the First and Seventh Circuits, but even under the narrow interpretation of the district court case on which IndyMac relies, *In re Smith*, 5 B.R. 500 (C.D.Ill. 1980), which was subsequently overruled in favor of a broader construction. While comparing how Section 522 of Title 11 is similar to the Uniform Exemption Act of 1976, (hereafter, the "UEA"), that

---

[9]Stephen F. Yunker, *The General Exemption of Section 522(d)(5) of the 1978 Bankruptcy Code*, 49 U. Chi. L. Rev. 564, 570-573 (Spring 1982).

[10]Report of the Committee on the Judiciary, House of Representatives, to Accompany H.R. 8200, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), pp. 361; Collier on Bankruptcy, 15th ed. rev. (2008), Volume C, App. Pt. 4-1498.

11

district court noted that

> the premise of this [Uniform Exemptions Act] is that in order for a debtor's
> property to be protected against compulsory application to the payment
> of his indebtedness, it must be used, or be adaptable for use in ways
> and for the purposes deemed on balance to be preferable to such applications.
> These ways and purposes have a perceived relation to the provisions of
> shelter, clothing, and other necessities of daily living in this country.

*In re Smith*, 5 B.R. at 502 (citing the Prefatory Note to the UEA, at 4).

The second flaw in the contention of IndyMac that Congress sought to avoid a "wild card" or "unfilled bin" lies in the particular language employed by Congress - namely, the word "any" in Section 522(d)(5). It would be incongruous for Congress to go through the trouble of specifying types of property elsewhere in Section 522, only to abandon such careful and meticulous detail in drafting subsection (d)(5). Therefore, reading Section 522 in its entirety, this Court finds that the more reasonable interpretation of subsection (d)(5) is that Congress purposely avoided the limitations on the types of property which it clearly spelled out in other subsections.

Notwithstanding this Court's initial view that the reference to "any property" ought to be construed broadly, we are cognizant that the interpretation of "any property" within the purview of 11 U.S.C. § 522(d)(5) perhaps has not been a model of clarity in prior decisions of this Court, nor has it been decided by the Second Circuit Court of Appeals. Therefore, we also look carefully at how our sister courts who have considered the matter have interpreted this exemption.

### 4.  Section 522(d)(5) is Interpreted Liberally by the Majority of Courts.

As indicated above, the Second Circuit has not addressed the scope of the Section 522(d)(5) exemption. However, various courts within the Second Circuit have construed

12

this exemption broadly to literally mean any property. *See*, *e.g.*, *Matter of Eldridge*, 15 B.R. 594, 595 (S.D.N.Y. 1981) ("This court has held that 'any property' means just that") (citing the exemption of inventory in *Matter of Upright*, 1 B.R. 694 (Bankr. N.D.N.Y. 1979)). In the case of *In re Phelmetta*, 7 B.R. 461, 464 (Bankr. D.Conn. 1980), our own Court similarly emphasized that Section 522(d)(5) provides for an exemption literally "in any property" by referencing the liberal interpretation in *Matter of Upright*, supra.

Likewise, the majority of courts in other circuits are of the view that the wild-card exemption is a broad one. In the First Circuit, for example, a cause of action arising under the Consumer Credit Protection Act was eligible for exemption under Section 522(d)(5). *In re Dipalma*, 24 B.R. 385, 391 (Bankr. D.Mass. 1982) ("[T]his Circuit has held that the term "any property" applies to any property which is considered part of the estate under § 541.") (citing *In re LaFlamme*, 14 B.R. 21, 26 (1st Cir. B.A.P. 1981)). The Third Circuit agrees with this result. *See, Augustine v. U.S.*, 675 F.2d 582, 586 fn. 8 (3rd Cir. 1982) ("Courts have construed the words "any property" liberally to permit the total . . . possible exemption under Subsection (d)(5) to be applied against any property that can be considered a part of the estate under 11 U.S.C. § 541."); *In re Duss*, 79 B.R. 821, 823 (Bankr. W.D.Wis. 1987) ("The language of § 522 of the Bankruptcy Code is clear, plain, and unambiguous. Thus the plain meaning of the statute should be controlling.")

The Fourth Circuit notes that West Virginia Code § 38-10-4(e) and its Bankruptcy Code counterpart Section 522(d)(5) "are 'wildcard' or general exemptions because any type of property can be exempted under them." *Wissman v. Pittsburgh Nat. Bank*, 942 F.2d 867 (4th Cir. 1991). Several lower courts in the Fifth Circuit construe the

13

exemption broadly as well. *See*, *e.g.*, *In re Solly*, 392 B.R. 692 (Bankr. S.D.Tx. 2008) (allowing the exemption of a portion of the value of a malpractice cause of action under Section 522(d)(5)); *University of Texas Medical Branch at Galveston v. Allan*, 777 S.W.2d 450, 455 fn. 7 (Tex.App. 1989) ("Section 522(d)(5), also known as the 'wild card' exemption allows the debtor to exempt any, as opposed to specific, property.") (internal citation omitted).

While the Sixth Circuit has not addressed the issue, various courts within the circuit have done so, including one recently. *See*, *In re Erickson*, 406 B.R. 522, 524 fn. 6 (2009) ("Section 522(d)(5) is often referred to as the 'catch all' or 'wild card' exemption. It permits the debtor to exempt from the estate anything the debtor might choose provided that the aggregate value of the property chosen does not exceed a specified amount."); *see, e.g.*, *Matter of Nichols*, 4 B.R. 711 (Bankr. E.D.Mich. 1980); *In re Brock*, 10 B.R. 67 (Bankr. W.D.Mich. 1981).

IndyMac admits that the Seventh Circuit has construed Section 522(d)(5) broadly. *See, In re Smith*, 640 F.2d 888, 891-93 (7th Cir. 1981) (holding that a debtor's cause of action for violations of the Truth in Lending Act may be exempt under the wild-card provision). In particular, the Seventh Circuit held that

> The draft bill submitted by the Bankruptcy Commission, which was used as a framework for the final bill, allowed the debtor to use only specific types of property to make up the deficiency in the homestead exemption. In contrast, the Code as enacted permits the use of "any property." Exemption statutes are to be construed liberally. In view of Congress' goal of providing a meaningful fresh start for debtors, it makes no sense to limit the type of property that may be applied to the general exemption without a clear statement of Congressional intent to do so.

*Id*. at 891 (footnotes in original omitted).

14

The Eighth Circuit has not ruled conclusively on the scope of the Section 522(d)(5) exemption due to procedural grounds[11], and the Tenth Circuit is silent regarding the issue. On the other hand, the Ninth Circuit has construed the term "any property" broadly, holding that under the "'catch-all' or 'wild card' exemption in 11 U.S.C. § 522(d)(5) . . . debtors not claiming a homestead exemption under § 522(d)(1) could exempt up to $17,850 *in property not covered by other § 522(d) exemptions.*" *Latman v. Burdette*, 366 F.3d 774, 779 fn. 1 (9th Cir. 2004) (emphasis added). Finally, although the Eleventh Circuit has not addressed the issue, at least one court therein viewed the Section 522(d)(5) exemption as a broad one, and clearly articulated its wide reach. *See*, *Matter of Boozer*, 4 B.R. 524, 527 (Bankr. N.D.Ga. 1980) (allowing value of household goods and furnishings in excess of Section 522(d)(3) exemption to spillover into Section 522(d)(5) exemption, but acknowledging that "[a]ccording to the terms of Section 522(d)(5), the exemption provided therein may be applied to any property. There is no limitation or restriction of any kind with regard to the type of property which may be exempt under this section.")

This Court's view that the Section 522(d)(5) exemption applies to any property without limitation as to its character or type is aligned and consistent with the majority of the newer courts which have addressed the issue. Specifically, this Court determines that the Section 522(d)(5) exemption applies literally to all property of the estate as defined by

---

[11]The Eight Circuit has held that a debtor could claim an exemption under the wild-card provision of Section 522(d)(5) even if she did not claim a homestead exemption under Section 522(d)(1), but remanded the matter to the bankruptcy court for a determination of whether the debtor's interest in two lawsuits could be exempt under Section 522(d)(5). *See*, *In re Martin*, 140 F.3d 806 (8th Cir.1998). Upon remand, the trustee's objection to the debtor's claimed exemption of those lawsuits was sustained on July 9, 1998, due to the failure of the debtor to appear at the hearing, leaving the issue unresolved on the merits. *See, In re Martin*, 287 B.R. 423, 426 fn. 2 (Bankr. E.D. Ark. 2003).

11 U.S.C. § 541, and not just the specific types of property listed elsewhere in Section 522 or causes of action specifically delineated in Section 522(d)(11). Therefore, the Debtors may claim an exemption in the Proceeds of the Action under Section 522(d)(5) to the extent such proceeds are unencumbered by a lien, and are within applicable statutory limits.

## B.  IndyMac's Motion to Determine Claim Status

### 1.  IndyMac Did Not Acquire a Security Interest in the Debtors' Cause of Action

The Court now turns to IndyMac's  . . . Motion for Determination of Secured Status, (Doc. I.D. No. 17).  IndyMac contends that notwithstanding whether the Debtors may exempt the Proceeds of the Action, it possesses a valid lien on the Proceeds because the Action constitutes collateral pursuant to the promissory note (hereafter, the "Note"), Doc. I.D. No. 17, Exh. A, and  security agreement (hereafter, the "Security Agreement"), Doc. I.D. No. 17, Exh. B, executed between the parties.   Specifically, IndyMac seeks a determination that it

> has a secured claim in the amount of $148,681.10, and, to the extent that the proceeds of the Action do not equal the amount of IndyMac's claim against Debtors, that the remainder of IndyMac's claim, after application of the proceeds of the Action, constitute an allowed unsecured claim.

Doc. I.D. No. 17, p. 4.

"A security interest is defined as a 'lien created by agreement.'"  *The Cadle Co. v.*

16

*Mangan*, 316 B.R. 11, 22 fn. 9 (Bankr. D.Conn. 2004); 11 U.S.C. § 101(51) (2007).  A

"security agreement" is an "agreement that creates or provides for a security interest."  11

U.S.C. § 101(50) (2007).  Coinciding with the execution of the Note, the Debtors executed

the Security Agreement, granting IndyMac a security interest in real property located at 15

Sable Drive, Ledyard, Connecticut, as well as certain personal property related thereto.

IndyMac subsequently perfected its security interest with respect to the Real Property and

fixtures pursuant to Connecticut General Statutes §§ 42a-9-310(a) and 42a-9-501(a)(1)(B)

by filing the requisite documents on the Ledyard Land Records on January 20, 2005.

Ledyard Land Records, Volume 396, Page 460.

The Security Agreement signed by the Debtors contained a clause that included as

collateral certain property rights related to the Real Property that may be subsequently

acquired by the Debtors.  The Security Agreement grants to IndyMac

> a security interest in the real property known as 15 Sable Drive, Ledyard,
> Connecticut (the "Real Property") and certain personal property related
> thereto including without limitation "any and all buildings, improvements
> (provided in the Agreement or otherwise), and tenements now or hereafter
> erected on the Property; . . . any and all contracts and subcontracts relating
> to the Property; any and all accounts, contract rights, instruments, documents,
> general intangibles, and chattel paper arising from or by virtue of any
> transactions related to the Property; . . . any and all products and proceeds
> arising from or by virtue of the sale, lease or other disposition of any of the
> Property; . . . all other interests of every kind and character which Borrower now
> has or at any time hereafter acquires in and to the Property, including all other
> items of property and rights described elsewhere in this Security Instrument.

*Motion*, (Doc. I.D. No. 17 at ¶ 3; Exhibit B).

The Proceeds from the Action are clearly encompassed by the description of

collateral in the mortgage.  Specifically, the Proceeds are characterized by several terms

in the Security Agreement, including the phrases "any and all contracts . . . relating to the

17

Property" such as the Debtors' contract with Smart Start for the latter to erect a modular home, and "any and all accounts, . . . arising from or by virtue of any transactions related to the Property."  In any reasonable interpretation of this after-acquired collateral clause, it extends to the proceeds resulting from a lawsuit over the failure to construct a modular home on the real property.

It is significant that the construction of the home on the Real Property was one of the principal purposes underlying the funds lent by IndyMac to the Debtors[12].  Connecticut General Statutes § 42a-9-315(a) provides that a security interest attaches to proceeds of collateral, and defines proceeds to include an amount "collected on, or distributed on account of, collateral" and "[r]ights arising out of the collateral."  Conn. Gen. Stat. § 42a-9-102(64)(B), (C) (2007).  The Proceeds from the Action were distributed on account of the collateral and arose out of the collateral.

Notwithstanding that the Debtors' cause of action would be within the description of the mortgage collateral as a general intangible, IndyMac never acquired a security interest therein because the modular home never came into existence and therefore was never acquired by any party.  "It is settled that [an after-acquired property clause] is valid, and that thereby the mortgage covers not only property then owned . . . , but becomes a lien upon all property *subsequently acquired* by it which comes within the description in the mortgage."  *Central Trust Co. of New York v. Kneeland*, 138 U.S. 414, 419, 11 S.Ct. 357, 358 (1891) (emphasis added).

---

[12] *Motion* at Exh. A, p. 12, ¶1 entitled "Construction/Permanent Loan," which states, "This Note, as amended, represents both a construction/home improvement loan and a permanent mortgage loan."

18

### 2.  IndyMac Did Not Perfect a Security Interest in the Debtors' Cause of Action

Even assuming, *arguendo*, that IndyMac acquired a security interest in the Debtors'

cause of action against Smart Start, IndyMac nonetheless failed to perfect the security

interest in the cause of action.  While IndyMac perfected a security interest with respect

to the Debtors' real property and fixtures by filing a financing statement on the Ledyard

Land Records, it failed to perfect a security interest in other personal property, including

the Debtors' cause of action against Smart Start or the Proceeds therefrom, by filing the

appropriate financing statement with the Connecticut Secretary of the State's Office or by

an acceptable method of automatic perfection.  *See, Cabaret Inc. v. Martin & Archambault

Ltd. Partnership*, 1992 WL 280615 at *2 (unpublished opinion), Superior Court, judicial

district of Hartford/New Britain at Hartford, Docket No. 702562 (Oct. 5, 1992, Schaller, J.)

("Security interests are perfected by the filing of a UCC-1 financing statement with the

secretary of state."); *see also, In re Lombardo's Ravioli Kitchen, Inc.*, 2009 WL 3257492

(Bankr. D.Conn. 2009) (Dabrowski, C.J.) (discussing "financing statements . . .filed with

the Connecticut Secretary of State's Office.")

Comment 6 to Connecticut General Statutes Section 42a-9-502 states, in pertinent

part,

> Under subsection (c), the recording of the record evidencing a mortgage (if it
> satisfies the requirements for a financing statement) constitutes the filing of a
> financing statement as to the fixtures (but not, of course, as to other goods)
> * * *
> Of course, if a combined mortgage covers chattels that are not fixtures,
> a regular financing statement filing is necessary with respect to the chattels,
>  and subsection (c) is inapplicable. Likewise, *a financing statement filed
> as a "fixture filing" is not effective to perfect a security interest in
> personal property other than fixtures*.  (Emphasis added).

19

The threshold issue is whether the Debtors' cause of action against Smart Start constitutes a fixture.  If the cause of action is characterized as a fixture, then IndyMac has properly perfected its security interest therein by virtue of the financing statement that it filed on the Ledyard land records.  If, however, the cause of action is not a fixture, then it is characterized as "personal property other than fixtures" within the purview of Connecticut General Statutes Section 42a-9-502, and the financing statement filed by IndyMac on the Ledyard land records "is not effective to perfect [the] security interest," id.

In its . . . Reply in Support of its Motion for Determination of Secured Status, (Doc. I.D. No. 64), IndyMac directs this Court to Connecticut General Statutes Section 42a-9-102(41), which broadly defines fixtures as "goods that have become so related to particular real property that an interest in them arises under real property law."  Under the Uniform Commercial Code as adopted by Connecticut, however, "[t]he term [goods]. . . does not include . . . general intangibles."  Conn. Gen. Stat. § 42a-9-102(44) (2009).  "'[G]eneral intangibles' means any personal property, including things in action."  *Matter of Metro Motor Sales, Inc.*, 160 B.R. 267, 269 (Bankr. D.Conn. 1993) (Krechevsky, C.J.); Conn. Gen. Stat. § 42a-9-102(42) (2009).  Since the Debtors' cause of action is within the definition of a general intangible, it is not a good and therefore cannot be a fixture. Furthermore,

> [t]o constitute a fixture, it is essential that *an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself*, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which [the realty] was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the

20

freehold was intended to be made by the annexation of the article.

*In re Spano*, 161 B.R. 880, 887 (Bankr. D.Conn. 1993) (Shiff, B.J.) (Emphasis added, internal quotation marks and citations omitted).  In the present matter, the Debtors' cause of action is a general intangible that cannot be physically annexed to the real property, and an inspection of the Debtors' real property would not make the cause of action clearly apparent.

Having determined that the Debtors' cause of action against Smart Start is not a fixture under Connecticut law, the Court finds that the financing statement filed by IndyMac on the Ledyard land records is insufficient to perfect any potential security interest in the cause of action.  *See*, Conn. Gen. Stat. § 42a-9-502, cmt. 6.  Any security interest in personal property other than fixtures, including the Debtors' cause of action or its proceeds, must be separately perfected by filing a financing statement with the Connecticut Secretary of State.  Consequently, although the terms of its security agreement would extend to the Debtors' cause of action, and notwithstanding the perfection of its security interest with respect to real property and fixtures, IndyMac has failed to perfect its security interest with respect to the Debtors' cause of action, and any proceeds therefrom.  IndyMac's lien is therefore unsecured by the Proceeds of the Debtors' cause of action against Smart Start.

## V. CONCLUSION

In light of the above, the Court finds and concludes that:

(1) <u>IndyMac Bank, F.S.B.'s Objection to Property Claimed as Exempt</u>, (Doc. I.D. No. 18), shall be **OVERRULED** insofar as the proceeds deriving from the Debtors' civil

21

action, captioned *"Scott Beaudoin and Jennifer Beaudoin v. Smart Start Building Systems, Inc.*, Judicial District of New London at Norwich, Docket No. KNO-CV-06-5100452-S,"* are subject to exemption under 11 U.S.C. §522(d)(5), and (2) IndyMac Bank, F.S.B.'s Motion for Determination of Secured Status, (Doc. I.D. No. 17), shall be **DENIED** insofar as the lien of IndyMac in the amount of $148,681.10 upon certain personal property of the Debtor, as described in its Mortgage Note and Security Agreement, is unsecured with respect to the Proceeds of the Action ($31,000.00).

An Order (1) Overruling INDYMAC, F.S.B.'s Objection to Exemption, and (2) Denying INDYMAC, F.S.B.'s Motion Determine Secured Status shall enter simultaneously herewith.

Dated: March 30, 2010                          BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge

22